UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY, as subrogee of Norman and Barbara Crawford, | ) ) ) | |
| Plaintiff, | ) ) | 1:08-cv-1506-SEB-DML |
| vs. | ) ) ) | |
| JARDEN CORPORATION d/b/a The Holmes Group, and SUNBEAM PRODUCTS, INC., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER ADDRESSING PENDING MOTIONS**

This cause is before the Court on Defendant Jarden Corporation d/b/a the Holmes Group's Motions for Summary Judgment [Docket Nos. 43 & 44], filed on September 11 and 15, 2009; Plaintiff State Farm Fire and Casualty Company's Motion to Exclude Any Reference to K. Scott Barnhill [Docket No. 61], filed on April 5, 2010; Plaintiff's Motion to Exclude Evidence of Dennis Smith [Docket No. 62], filed on April 5, 2010; Plaintiff's Motion to Exclude All Opinion Evidence of the Carmel Fire Department [Docket No. 63], filed on April 5, 2010; Defendants' Motion to Exclude Testimony of Scott Jones [Docket No. 64], filed on April 5, 2010; and Defendants' Motion to Exclude Testimony of David Kloss [Docket No. 66], also filed on April 5, 2010.

*Background*

Plaintiff State Farm Fire and Casualty Co., as subrogee of Norman and Barbara Crawford, filed the present cause of action against Jarden Corporation d/b/a The Holmes Group ("Jarden") and Sunbeam Products, Inc. ("Sunbeam") for damages caused by a fire that occurred in the garage of Plaintiff's subrogors. The present motions before the Court do not substantially develop the factual details underpinning this claim, but, generally, it is Plaintiff's position that the cause of the fire was a defective space heater allegedly manufactured, provided, and sold by Defendants.

The heater in question was a "Patton" brand model number PQH307 apparently manufactured by The Holmes Group, which has since merged into Defendant Sunbeam. Compl. ¶ 7.[1] Sunbeam is a wholly-owned subsidiary of Defendant Jarden Corporation.

Before the Court are numerous evidentiary motions as well as a motion for summary judgment seeking the removal of Jarden entirely from the litigation as an improperly named party.

*Discussion*

**I.    Evidentiary Motions**

*A.    Reference to K. Scott Barnhill*

Plaintiff moves first to exclude any reference to a study conducted by Scott

---

[1] The Holmes Group, Inc. was merged into JCS/THG, LLC on July 18, 2005; thereafter, on June 13, 2006, JCS/THG, LLC was merged into Sunbeam.

Barnhill in which Mr. Barnhill recorded the results of his testing of the characteristics of heaters similar to the one at issue here as well as the potential effects fire might have on such a heater. The sole reference to this study in the evidentiary record appears as an attachment to the supplemental report of Defendants' expert causation witness, Daniel L. Churchward.[2] Defendants have not independently offered Barnhill's study for admission into the record, nor have they designated him as a potential witness in this matter.

According to Plaintiff, the Barnhill study is not admissible because it is irrelevant and because it constitutes an impermissible attempt by Defendants to sneak additional expert testimony into the record through the back door, that is, without designating the evidence or ever identifying Barnhill as a witness, as required. At his deposition, Churchward stated that he did not attach the Barnhill study to his report himself and, further, that he was unaware of the study until Defendants' attorneys informed him of it. Dep. of Churchward at 143. Moreover, Churchward stated that the Barnhill study was "moot" and, in at least one instance, referred to it as "not relevant." Id. at 144, 148. In another instance, however, Churchward stated, "[I]f my understanding of [Plaintiff's expert's] opinion is incorrect, then Mr. Barnhill's report is relevant." Id. at 148.

Federal Rule of Evidence 402 broadly provides that "[a]ll relevant evidence is admissible." Relevant evidence is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more

---

[2] Indeed, the only difference between Churchward's original report and his supplemental report was the attachment of this reference.

probable or less probable than it would be without the evidence. The Rules' basic standard of relevance thus is a liberal one." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 587 (1993). Were the Barnhill study introduced properly as a separately designated expert report or other evidence, it would likely meet this low threshold for admissibility. However, Defendants have not proffered this evidence independent of Churchward's report; indeed, Churchward never even knew this report existed. Thus, Plaintiff's concern that Defendants are attempting to introduce new expert testimony "through the back door" appears to be well-taken.

Courts must be vigilant in policing parties' attempts to "sandbag" opponents with inappropriately filed expert evidence. See In re Ready-Mixed Concrete Antitrust Litig., 261 F.R.D. 154, 159 (S.D. Ind. 2009). "The purpose of the [expert] report is to 'set forth the substance of the direct examination.'" Jenkins v. Bartlett, 487 F.3d 482, 487 (7th Cir. 2007) (quoting Fed.R.Civ.P. 26 advisory committee note). Thus, admitting this study would enable Defendants unfairly to alter Churchward's expert report in a way that he never intended simply by eliciting amended testimony from him at trial based on the Barnhill study. Clearly, this would prejudice Plaintiff. Thus, because Defendants, through the inclusion of this study, attempt to circumvent the evidence rules relating to expert disclosure, and because Churchward clearly did not rely upon the study in forming his expert opinions, and further because Defendants have not offered the Barnhill study as independently admissible evidence, Plaintiff's motion to exclude this evidence must and shall be granted.

B.  *Evidence of Dennis Smith*

Plaintiff also moves for an order excluding all evidence of Defendants' fire origin investigator, Dennis Smith, on the ground that Defendants' cause expert, Churchward, did not rely upon Smith's investigation evidence in formulating his expert opinion. According to Plaintiff, the fact that Churchward did not rely upon Smith's evidence renders that evidence irrelevant and thus inadmissible.

This proffered evidence is easily distinguishable from the Barnhill study discussed above. Here, Defendants offer Smith's findings and testimony as independently admissible evidence on ultimate questions of causation. Smith was retained by Defendants to investigate the origin and cause of the fire in question, and they have introduced his conclusions into the record not only in connection with Churchward's opinions, but also in their own right, listing Smith as a witness as well as proffering his deposition testimony. Courts routinely rely on the testimony of certified fire and explosions investigators such as Smith to assist the jury in determining the factual issues in cases such as this one. See Gaskin v. Sharp Elecs. Corp., 2007 WL 2572397 (N.D. Ind. Aug. 31, 2007). Therefore, Smith's evidence is both timely proffered and independently relevant and is thus admissible. See Fed.R.Evid. 402. Plaintiff's motion to exclude this evidence shall therefore be denied.

C.  *Carmel Fire Department Evidence*

Plaintiff also seeks the exclusion of evidence garnered and analyzed by the Carmel

5

Fire Department in the course of its investigation of the fire at issue here. As with the other evidence Plaintiff challenges, the grounds asserted in this motion are that this evidence is irrelevant because no expert testifying in the case relied upon it in preparing an expert report.

The investigation evidence gathered by the Carmel Fire Department is independently admissible. See Fed. R. Evid. 402. This evidence represents the findings of the lead investigator, Lieutenant Alan Young of the fire department, based upon his investigation of the fire in question. Young has been disclosed by Defendants as both a non-retained expert witness and as a lay witness. Plaintiff does not challenge his standing to testify in either capacity, and at least one precedent, although not controlling, suggests that the evidence he offers will be helpful to a jury in a case such as this. See U.S. v. Romandine, 289 Fed. Appx. 120 (7th Cir. 2008). Plaintiff has pointed to no contrary holding by any court.

Accordingly, the evidence of the investigation conducted by the Carmel Fire Department is relevant and independently admissible, and Plaintiff's motion to exclude this evidence shall be denied.

D.   *Expert Testimony*

Defendants move the exclude the reports, testimony, and other opinions of Scott A. Jones and David Kloss, who Plaintiff has designated as Rule 26 experts and who have concluded in their separate expert reports that the cause of the fire in question was the

space heater manufactured by Defendants.

The admissibility of expert testimony is governed according to the framework set out in Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms. Inc. 509 U.S. 579 (1993). Applying this framework, courts must undertake:

> a three-step analysis: the witness must be qualified "as an expert by knowledge, skill, experience, training, or education"; the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue.

Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007) (quoting Fed.R.Evid. 702); see also Kumhoe Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (extending the Daubert admissibility framework to expert testimony in the social sciences). "The Daubert standard applies to all expert testimony, whether it relates to an area of traditional scientific competence or whether it is founded on engineering principles or other technical or specialized expertise." Smith v. Ford Motor Co., 215 F.3d 713, 719 (7th Cir. 2000) (citing Kumho, 536 U.S. at 141).

1. Scott Jones

We first discuss the admissibility of the opinions of Scott Jones. Defendants do not substantively challenge Jones's qualifications to testify on the matters contained in his report. However, even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in Daubert."

Clark v. Takata Corp., 192 F.3d 750, 759 n.5 (7th Cir. 1999).  The testimony of a "well credentialed expert who employs an undisclosed methodology" or who offers opinions lacking "analytically sound bases" must be excluded.  Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000).  Thus, although the Court's role does not include an assessment of the credibility or persuasiveness of the proffered testimony, which factual issues are left for the jury to determine, Deputy v. Lehman Brother's, Inc., 345 F.3d 494, 506 (7th Cir. 2003), the Court, "in its role as a gate-keeper," must nonetheless determine if Jones's opinions are based on reliable methodology, and whether they would be helpful to a jury.  Winters v. Fru-Con, Inc., 498 F.3d 734, 743 (7th Cir. 2007).

    Defendants' first contention is that Jones's opinions fail to adhere to the scientific method because they did not follow the generally accepted scientific norms set forth in NFPA (National Fire Protection Association) 921, Guide for Fire and Explosion Investigations 921-14 (2004 ed.) ("Use of the scientific method dictates that any hypothesis formed from an analysis of the data collected in any investigation must stand the challenge of reasonable examination by the investigator testing his hypothesis.").[3]  Defendants also challenge Jones's opinions on the ground that they were formed prematurely, before much of the discovery in this case was conducted.  See Dep. of Jones

---

[3]The NFPA is widely recognized by the courts as a guide for assessing the reliability of expert testimony regarding fire investigations.  See, e.g., Indiana Insurance Co. v. General Electric Co., 326 F.Supp.2d 844 (N.D. Ohio 2004); Royal Insurance Co. v. Joseph Daniel Construction, Inc., 208 F.Supp.2d 432 (S.D.N.Y. 2002).

at 41.  According to Defendants, had Jones read the depositions of the homeowners, he would have learned critical information that would have altered his opinions significantly.

Jones's examination consisted of observing the heater and other circumstances surrounding the fire site over the course of three days, a fact which Plaintiff points out in defending this proffered expert's report.  It is clear, however, that Jones relied on little more than superficial observation of the heater, and that none of his methods qualify as scientific analysis sufficient to meet the standards of Rule 702.

Furthermore, Defendants point to numerous instances in which Jones admitted that he never subjected his hypotheses to empirical testing, but relied solely on general observation of the circumstances.  See Dep. of Jones at 25, 31, 114.  An expert's analysis should be rejected if it is too speculative.  Thus, if it relies on "unjustifiable extrapolation," Fuesting v. Zimmer, Inc., 421 F.3d 528, 536 (7th Cir. 2005) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997)), or indicates a clear "absence of any testing," Chapman v. Martag Corp., 297 F.3d 682, 688 (7th Cir. 2002), it must be excluded.  Plaintiff has failed to provide any support for its assertion that Jones engaged in proper experimentation and testing, and Jones provided no citations to any accepted testing method applied by him in his report.

Because it is unmistakably clear that Jones developed his opinions well before the facts underpinning this case were developed, and because those opinions were formed without sufficient reliance upon the scientific method and an adequate analysis of the data and circumstances of the fire in this case, Jones's opinions must be deemed unreliable and

9

thus inadmissible as expert testimony.  See, e.g., Presley v. Lakewood, 553 F.3d 638 (8th Cir. 2009).  Defendants' Motion to Exclude the opinions of Scott Jones shall therefore be granted.

2.	David Kloss

Unlike the challenge leveled against Jones, Defendants challenge Kloss's qualifications to render his proffered expert opinions, specifically, his opinions relating to principles of electricity and electrical engineering.  "A court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area."  Smith, 215 F.3d at 718.  "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion."  Ancho v. Pentek Corp., 157 F.3d 512, 518 (7th Cir. 1998).

In advancing these criticisms, however, Defendants take too narrow a view of the expertise utilized by Kloss in arriving at his conclusions.  Kloss's background includes many years of experience as a fire investigator; he rigorously followed the scientific methods outlined in NFPA 921 to formulate his opinions as to the cause of the fire at issue here; and he has demonstrated his expertise in the areas of burn patterns and fire origin.  This expertise informed his opinions, not his analysis of electrical appliance design, as Defendants erroneously contend.  That he appears to have no relevant expertise in electrical engineering is a matter upon which Defendants may cross-examine his

10

testimony, but it is not a sufficient basis on which to render him unqualified to testify as he has done.  Smith, 215 F.3d at 718-719 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

Defendants also challenge Kloss's opinions on the ground that his method was unreliable and would not be helpful to a jury.  Winters, 498 F.3d at 743.  They contend that Kloss engaged in insufficient experimentation to develop his conclusions, and that his reasoning and findings are refuted by other expert testimony in the record.  Unlike Jones, however, Kloss clearly followed the scientific method prescribed by the applicable fire investigation manual and subjected the fire scene to numerous accepted tests in order to arrive at his conclusions.

The thrust of Defendants' challenge is that Kloss's opinions are unreliable because they are founded on expertise that does not encompass all the possible relevant factors.  Courts routinely reject such arguments in the Daubert context:  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596 (citing Rock v. Arkansas, 483 U.S. 44, 61 (1987)).

Whether additional or alternative testing would undercut or support his testimony is a question of the weight to be given his conclusions, which can be addressed at summary judgment or at trial.  U.S. Automatic Sprinkler, Co. v. Reliable Automatic Sprinkler Co. et al, 2010 WL 1266659, at *3 (Mar. 25, 2010) (citing Marvin Lumber v.

11

PPG, 401 F.3d 901, 916 (8th Cir. 2005)). Because Defendants have not shown that Kloss lacks relevant expertise, or that his methods were unreliable in a way that would render his testimony unhelpful, Defendants Motion to Exclude the evidence and testimony of David Kloss shall be <u>denied</u>.

## II. *Motions for Summary Judgment*

### A. *Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. <u>See id.</u> at 255. However, neither the "mere existence of some alleged factual dispute between the parties," <u>id.</u> at 247, nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. <u>Michas v. Health Cost Controls of Ill., Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enters., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a party will be unable to satisfy the legal requirements necessary to establish its case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

**B.     *Jarden Corporation's Motions for Summary Judgment*[4]**

Jarden contends that it is entitled to summary judgment on the ground that it is not,

---

[4] Jarden has filed two motions for summary judgment, but because these motions are identical and duplicative, we have addressed and resolved them in tandem.

in fact, an interested party in this litigation but is merely the parent corporation of Sunbeam, which is the true interested party. It is well established that "a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United States v. Best Foods, et al., 524 U.S. 51, 55-56 (1998). Therefore, to be an appropriately named party, Jarden must be subject to potential liability independent of its relationship with Sunbeam.

Plaintiff asserts a strict product liability claim against Jarden, based on Indiana Code § 34-20-2-3, which states that liability for its prohibitions extends to the "seller" and "manufacturer" of the allegedly defective product. See also Ind. Code § 34-20-2-1 (stating that such an entity is "subject to liability . . . if: (2) the seller is engaged in the business of selling"). Plaintiff contends that Jarden is an interested party because it holds itself out on its public website as a "provider" of many branded products, including those encompassing the space heater in question in this litigation.

Despite these representations on Jarden's website, it is abundantly clear from the record compiled before the Court in this litigation, including Jarden's corporate records and its answers to Plaintiff's interrogatories, that Jarden is not a legally liable party. The website materials cited by Plaintiff do not substantially refute the clear evidence of record demonstrating that Jarden was not, in fact, the seller of the space heater in question. Thus, Jarden cannot be held independently liable for Plaintiff's claim of strict product liability.

Plaintiff also seeks relief from Jarden for breach of the implied warranty of

merchantability, pursuant to Indiana Code § 26-1-2-314. As with the statutory provision codifying the applicable products liability law, this section subjects to liability only the "seller" of the subject goods. Therefore, once again, because it is clear that Jarden does not qualify as a seller of the subject space heater, it cannot be held liable for Plaintiff's claims.

Accordingly, we conclude that Jarden is not a properly named party in the case at bar, and its motions for summary judgment therefore must be granted. Plaintiff's case shall proceed only against the proper party in interest, Sunbeam, the successor to the manufacturer and seller of the space heater at issue in this case.

### III.  Conclusion

For the reasons detailed in this entry, Defendant's Motions for Summary Judgment are GRANTED; Plaintiff's Motion to Exclude Any Reference to K. Scott Barnhill is GRANTED; Plaintiff's Motion to Exclude Evidence of Dennis Smith is DENIED; Plaintiff's Motion to Exclude All Opinion Evidence of the Carmel Fire Department is DENIED; Defendants' Motion to Exclude Testimony of Scott Jones is GRANTED; and Defendants' Motion to Exclude Testimony of David Kloss is DENIED.

IT IS SO ORDERED.

Date: ____06/16/2010_____

*signature: Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Brian J. Benoit
WIEDNER & MCAULIFFE, LTD.
bjbenoit@wmlaw.com

Keith A. Gaston
CRUSER, MITCHELL & GASTON, LLC
kgaston@cmlawfirm.com

Carolyn Small Grant
GRANT AND GRANT
csg@grantandgrant.net

Robert George Grant
GRANT & GRANT
rgg@grantandgrant.net

Gregory A. Hubbard
CRUSER, MITCHELL & GASTON, LLC
ghubbard@cmlawfirm.com